IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BERNARD K. BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09cv587-WC |
| | ) | |
| MPW INDUSTRIAL SERVICES, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION & ORDER

Before the court is Defendant MPW Industrial Services, Inc's ("MPW") Motion for Summary Judgment (Doc. #42), Plaintiff Bernard K. Byrd's ("Byrd") Response (Doc. #54), and MPW's Reply (Doc. #61). MPW has also filed a Motion to Strike Evidentiary Submissions (Doc. #60). For the reasons that follow, the court finds that the motion for summary judgment is due to be GRANTED and the Motion to Strike is due to be DENIED.

**I.   BACKGROUND**

Byrd filed a Complaint on June 22, 2009, alleging: (Count I) wrongful termination in violation of Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"); (Count II) wrongful termination in violation of 42 U.S.C. §1981; (Count III) MPW's failure to accommodate Byrd's sincerely held religious beliefs in violation of Title VII; and (Count IV) retaliation in violation of Title VII. *See* Complaint (Doc. #1).  MPW moved to dismiss the Complaint on the bases that it failed to sufficiently set forth a claim, and that Byrd had failed to file a claim with the Equal Employment Opportunity Commission

("EEOC") in a timely manner. Def.'s Motion to Dismiss (Doc. #6). Following Byrd's response and upon a review of the briefings, the court notified the parties that it was converting MPW's Motion to Dismiss into a Motion for Summary Judgment under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Order of September 9, 2009 (Doc. #15). MPW then filed an Amended Motion for Summary Judgment. (Doc. #16). Byrd filed a Motion for Continuance of the Motion for Summary Judgment (Doc. #19), which the court construed as a motion to conduct discovery pursuant to Rule 56(f) and granted. Order (Doc. #24). The court also denied the Amended Motion for Summary Judgment without prejudice, and set a new dispositive motions date of September 15, 2010. Scheduling Order (Doc. #31). On September 15, 2010, MPW filed the instant Motion for Summary Judgment. After granting a couple of continuances, the Motion for Summary Judgment and Motion to Strike were set for submission.

## II. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] Only disputes about material facts will preclude the granting of

---

[1] On December 1, 2010, amendments to Rule 56 became effective. The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, __ F.3d __, 2011 WL 183969 at *9 n.4 (1st Cir. Jan. 21, 2011) (internal quotations omitted) (emphasis in original). Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the Court to portions of the record which support the motion. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the

---

construing and applying" the standard now articulated in Rule 56(a). Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments. Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### III.  STATEMENT OF FACTS

The Court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, the Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts[2]:

---

[2] MPW's brief states that:

> MPW has set out Undisputed Facts providing all reasonable inferences to

MPW held a contract with Hyundai Motor Manufacturing Alabama, LLC ("Hyundai") to provide workers to perform maintenance duties at the Hyundai manufacturing facility to facilitate the workflow of Hyundai's employees. MPW employees drove around the Hyundai factory, picking up discarded materials, and moving them away from the work areas so that factory business could be conducted in an orderly and cost effective manner. When Hyundai factory production was delayed as a result of an MPW employee's actions, MPW was financially penalized.

Byrd, a black male, was hired by MPW to work as a Technician I. He was scheduled to work Wednesday through Saturday between nine and thirteen hours a night. On December 22, 2007, Byrd was issued a written warning by his Team Leader Robert Caldwell, a black male, for excessive tardiness and absences, but the disciplinary action was voided because specific dates for the infractions could not be provided. Byrd did not believe this warning was issued because of discrimination. On Februaury 1, 2008, Byrd was given a verbal warning regarding his tardiness, memorialized in a Corrective Action Form.

---

Plaintiff. Pursuant to the Court's direction counsel for MPW provided these facts to counsel for Byrd to ask to what she would agree. Plaintiff's counsel [sic] reasoning for such dispute is that she was not able to question her client after his deposition.

Def.s' Brief (Doc. #42) at 5 n.2.  The court can not help but think there may be a missing sentence or verb in that statement, and based on MPW's citation to an email exchange, it appears that there may have been very little to which the parties may have initially agreed. However, there is no section of disputed facts in MPW's brief. Byrd filed his own undisputed facts section and then responded to MPW's undisputed facts. The court has established this fact section by combining the relevant undisputed and disputed facts and making determinations where necessary.

During the time of his employment at MPW, Byrd, a Catholic, received seventy-five dollars a week to play music at a church of which he was not a member. Prior to this, Byrd received two-hundred dollars a week playing music at a church in Georgia, of which he was not a member. He was also self-employed as a yardman. As a result of his side jobs, Byrd secured permission to leave work early from Team Leader McMurry, as long as other MPW employees were leaving their shifts early too.

Michael D. Smith, Operations Manager for MPW learned of Byrd's early departures and ordered him to stop. Despite the order, Byrd went home early on either May 15, or 17, 2008. On May 18, 2008, Smith met with Byrd to discuss his early departure. Prior to the meeting, Smith prepared a corrective action form for suspension and issued it to Byrd at the meeting. Smith also informed Byrd that his schedule had been changed to Thursday through Sunday. Byrd protested about being scheduled to work Sundays and claimed that another employee, Angela Hudson had bragged to him that she was allowed to leave whenever she wanted and that this was sex discrimination. Byrd stated in his EEOC intake questionnaire that he believed Angela was allowed to leave early, because her supervisor liked her work. Smith informed Byrd that he would look into the matter.

At some point the meeting became heated. According to Smith, Byrd became loud, physically threatening, and repeatedly called company managers stupid. Byrd, admits that "things got heated," he was "agitated," and that Smith asked him if he was going to hit him.

Team Leader Roland Williams submitted a sworn declaration that states he was called into the meeting and agrees that Byrd was angry, threatening, and called Smith stupid.

Byrd was terminated following the meeting and his termination form states that he was terminated for insubordinate comments and threats of violence toward management.

## IV.   DISCUSSION

MPW moves for summary judgment as to all of Byrd's claims.  The first issue presented by MPW is a challenge to the filling of Byrd's EEOC Complaint.  Byrd argues that, to the extent his complaint was untimely, he should be excused because the EEOC was the cause of the delay.  The court has declined to undertake an analysis of this argument because, even assuming Byrd's filing with the EEOC was timely, or could be excused, MPW is entitled to summary judgment on the substance of Byrd's claims.  The court makes this determination for the following reasons:

### A.   *Counts I & II - Wrongful Termination*[3]

In Counts I and II of his Complaint, Byrd alleges that his employment was terminated because of his race, in violation of Title VII and 42 U.S.C. § 1981.  Byrd's claims in Count I and II are identical with the exception of the first being brought under Title VII and the second under § 1981.  Because the elements and the analytical framework for the two claims

---

[3] MPW has also protectively moved for summary judgment as to any sex discrimination claim that might be asserted by Byrd.  However, Byrd failed to plead a distinct sex discrimination claim in his complaint, and the court will not infer one.  Accordingly, the court will not discuss this portion of MPW's brief.

7

are the same, the court will address them together. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

"Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1286 (11th Cir. 2000). "A *prima facie* claim of discrimination can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla,* 510 F. Supp. 2d 671, 681 (N.D. Fla., 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). Byrd claims that there is direct and circumstantial evidence supporting his claims.

    **1.**    *Direct Evidence*

Byrd claims that during his meeting with Operations Manager Smith, after Byrd protested being assigned to work Sundays, Smith stated that Byrd was a "church little boy," and that this statement constitutes direct evidence of racial discrimination. Pl.'s Brief (Doc. #54) at 11. Byrd asserts that "under local custom and historical usage, it is an undisputed fact that in the segregated South, the word 'boy,' was used [as] a racial slur and a term of disrespect to Black men." *Id*. Byrd admits that, while "the disputed word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign. The speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). Byrd's argument is based on local custom and historical usage of the term alone.

The problem for Byrd, however, is that, while the Supreme Court in *Ash* rejected the Court of Appeals for the Eleventh Circuit's finding that the term "boy" must include modifiers such as "white" or "black" in order to evidence discrimination, the Supreme Court also directed that the meaning depended on several factors. *Id*. Once *Ash* was remanded to the Eleventh Circuit, the court once again held that the use of the term "boy" "was not sufficient, either alone or with the other evidence, to provide a basis for a jury reasonably to find [ . . . ] racial discrimination." *Ash v. Tyson Foods, Inc.*, 190 F. App'x 924, 926 (11th Cir. 2006) ("Ash III"). The court made this determination by finding that the usages of the term were conversational and non-racial in context. *Id*. In *Ash* (IV), *Ash v. Tyson Foods, Inc.*, 392 F. App'x 817 (11th Cir. 2010) the Court of Appeals reiterated their findings in *Ash III*, that the use of the term was not evidence of racial bias, explaining that even though the plaintiffs had argued the historical usage of the term was offensive to them, "the issue is not what was in their mind when they heard the term but what was in [the speaker's] mind when he used it." *Ash IV*, 392 F. App'x at 833. After *Ash* was decided in the Supreme Court, the Court of Appeals in *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008), "found that a black employee's allegations that a white employee called her 'girl' and two male black employees 'boys,' and that another coworker referred to a former black employee as a '['n-word'] bitch' did not amount to severe or pervasive harassment. *Id*. at 1378-79." *Alexander v. Opelika City Schools*, 352 F. App'x 390, 393 (11th Cir. 2009). In *Alexander*, the Court of Appeals upheld the district court's grant of summary judgment where the plaintiff "testified that he was

9

called 'boy' constantly, but could only recall eight specific instances over the course of two years where he was called 'boy,'" and where a "comment was made by his supervisor about how to tie a noose around a person's neck." *Id*.  In the present case, Byrd only alleges that the term 'boy' was used once.

Fortunately, this court need not delve into the quandary of whether the term "boy," without modifiers is evidence of racial discrimination in this case.  Here, the term "boy" is preceded by the modifier "church little" and the context of the conversation is also known. Byrd has put forth no evidence that "church little boy," or even "little boy" is a racial term in the "segregated South" or in any region for that matter. Further, Byrd admits that the term was used by his supervisor in the context of his work attendance.  Plaintiff's Resp. (Doc. #54) at 11.   More specifically, Byrd explains in his EEOC intake questionnaire that the supervisor made the comment when Byrd had requested to not be scheduled to work on Sundays.  EEOC Intake Questionnaire (Doc. #44-18) at 3. Byrd states that upon hearing this request, his supervisor replied: "Oh yeah, you are nothing but a church little boy. I am putting you on the schedule for next Sunday, and if you don't show up – you know what will happen to you." *Id*. Byrd stated in his deposition that he believed this remark was made to make fun of him because of his request to be off on Sundays.  Byrd Depo. (Doc. #44-1) at 30. Although Byrd later stated in his Affidavit that he believes the comment was racial in nature, Byrd Affidavit (Doc. #55-8) at 2, this is in direct conflict with his deposition testimony, which clearly sets the context for the comment and where Byrd testified that the comment

10

was made to suggest that he "was just a kid." Byrd Depo. p.119 (Doc. #44-1) at 30.  Thus, the court is free to disregard Byrd's later, conflicting Affidavit. *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 (11th Cir. 2003) ("Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony.")

Taking the facts in a light most favorable to Byrd, the court finds that he has made no showing of racial discrimination. If the supervisor made the comment, his intent may have been to disparage Byrd, but no racial animus can be inferred from this statement.

"Under Eleventh Circuit law, 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.'" *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 857 (11th Cir. 2010).  Because Smith's comment could have meant something other than a racial disparagement, and even Byrd provided a non-racial explanation of the phrase, Byrd has failed to provide direct evidence of discrimination.

### 2. *Circumstantial Evidence*

Where a plaintiff offers circumstantial evidence of disparate treatment, the Supreme Court has established "a basic allocation of burdens and order of proof in a disparate treatment case, [under] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003)." *Davis v. NPC Pizza Hut*, 447 F. Supp. 2d 1260, 1266 (N. D.

Ala., 2006). "[T]he plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *McCalister v. Hillsborough County Sheriff*, 211 F. App'x 883, 884-85 (11th Cir. 2006).

"To set out a prima facie case, the plaintiff may show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of the Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). While MPW does not dispute that Byrd is a member of a protected class, it does dispute that Byrd was qualified for his job, that he was subjected to an adverse employment action, and that similarly situated employees were treated more fairly. Def.'s Brief (Doc. #43) at 15-17. First, MPW points to Byrd's alleged violent outbursts at work to argue that Byrd was not qualified for his job, because he lacked the ability to cope with the stress of being able to remain at work during scheduled work hours. *Id*. at 21. Second, MPW argues that Byrd's being asked to stop leaving work early was not an adverse employment action. *Id*. Third, MWP agues that Byrd can not show a similarly situated comparator, because he was terminated due to his violent outbursts when confronted about leaving early. *Id*. at 24.

Byrd counters that the burden shifting analysis is not applicable here because he has shown direct evidence of discrimination. Pl.'s Brief (Doc. #54) at 12. Further, he argues that his termination was due to his request to be allowed to not work on Sundays, that his

termination was adverse, and that Angela Hudson was allowed to not work on Sundays. *Id*. Byrd also argues that the record reflects that he was never violent when confronted about his absences. *Id*. at 14.

Assuming Byrd can show that he was qualified for his position and suffered an adverse employment action, the court finds that Byrd is unable to establish a *prima facia* case of wrongful termination, because he has failed to provide evidence of a valid comparator. Byrd offers the affidavit of Marcus Barnes, which references a Shawn Kelly as a fellow employee who missed work and was late starting his shift at MPW. Barnes Affidavit (Doc. #55-9) at 1. This is not a valid comparator. "A plaintiff is similarly situated to another employee only if the 'quantity and quality of the comparator's misconduct' are 'nearly identical.'" *Burke-Fowler v. Orange County, Fla.,* 447 F.3d 1319, 1323 (11th Cir. 2006) (citation and quotation omitted). Mr. Barnes's affidavit describes one incident where Mr. Kelly did not show up for work for several days and was still allowed to return to work; it also states that Mr. Kelly was often late for work. Barnes Affidavit (Doc. #55-9) at 1. In contrast, Byrd was cited for being late, often leaving his shift early, and ultimately fired for insubordination. Byrd points to no one who acted similarly insubordinate and directly to management.

In addition, and possibly more important, even were the court to assume that Byrd could establish a *prima facia* case of termination on the basis of race, MPW provided "legitimate, nondiscriminatory reasons for the challenged employment action." *Combs v.*

13

*Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). MPW's "burden of rebuttal is exceedingly light." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004). Specifically, MPW asserts that Byrd's employment was terminated for his insubordination. MPW offers the declaration of Operations Manager Smith, who states that when he confronted Byrd about leaving his shift early and informed him that his shift was being changed to Thursday, Friday, Saturday, and Sunday, Byrd became loud, physically threatening, and referred to management as stupid. Smith Declaration (Doc. #44-6) at 1. MPW also offers the sworn declaration of Williams which states that he was called into the meeting between Smith and Byrd, and agrees that Byrd was angry, threatening, and called Smith stupid. Declaration of Williams (Doc. #44-7). Further, Byrd admits in his deposition that when he was informed of the shift change and referred to as a "church little boy" he stood up and asked Smith to "say that again." Byrd Depo. (Doc. #44-1) at 30. He also admits that "things got heated," he was "agitated," and that Smith asked him if he was going to hit him. *Id*.

Once MPW proffered a non-discriminatory reason for Byrd's termination, Byrd "then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). While Byrd states in his Affidavit that he did not threaten to commit violence against Smith, he also states that he believed he had a right to challenge Smith in a non-violent way. Byrd Affidavit (Doc. #55-8). Byrd does not offer evidentiary support to challenge that he was loud and physically

14

threatening. To do so would be in direct conflict with his deposition testimony. Byrd has otherwise failed to rebut the non-racial reasons for his termination as set forth by MPW. Because he has not met his burden, even were this court to assume a *prima facia* case of discrimination, MPW is entitled to summary judgment on this issue.

### B.     *Failure to Accommodate (Count III)*

Byrd claims that MPW failed to accommodate his sincerely held religious beliefs. "To prevail on this claim, [Byrd] must establish that (1) [he] held a bona fide religious belief that conflicted with an employment requirement; (2) [he] informed [MPW] of that belief; and (3) [he was] discharged for failing to comply with the conflicting employment requirement." *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 855 (11th Cir. 2010). MPW argues Byrd is unable to meet any of these requirements, because he is unable to show that he belongs to a religion that prohibits his work on Sundays, he did not seek to accommodate his own beliefs by changing his shift and instead became angry and insubordinate, and that he was not terminated for refusing to work on Sundays. Def.'s Brief (Doc. #43) at 20-23.

Byrd maintains, throughout his brief, that it is MPW's burden to prove that there is no material issue of fact with regard to his claims and that MPW has failed to do so, and thus, he is entitled to proceed to trial. This is not completely accurate. MPW has challenged Byrd's establishment of a *prima facia* case of religious discrimination. Therefore, Byrd is obliged to establish the elements of the *prima facia* case and MPW is free to rebut them. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Because Byrd maintains, in contrast to the case law cited above, that MPW must first prove that Byrd cannot make a *prima facia* case, he wholly fails to establish one. Byrd claims a sincere religious belief in his Brief, but puts forth no evidence in support. There is a disagreement in the briefs regarding whether Byrd went to church merely because it was a source of income, or because he enjoyed it. Yet, MPW's challenge to whether Byrd's attendance at church was for monetary gain is only relevant after Byrd establishes that he holds a sincere religious belief that conflicts with his employment requirement.

Byrd claims that he has offered direct evidence of his sincere beliefs. First he states that he is a Christian, then offers his deposition testimony wherein he testifies that he really enjoys going to church. Pl's Brief (Doc. #54) at 13. Byrd asserts that this is the "best evidence of his sincerity." *Id*. Byrd has only established his enjoyment of attending Sunday services, but this court needs to determine whether Byrd was terminated "because of an honest conviction that such work was forbidden by his religion." *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 716 (1981). It is one thing to enjoy Sunday services, it is quite another to hold a sincere belief that to miss them would be forbidden by religious beliefs. Byrd's Affidavit is silent on the subject, other than to say that he was willing to work another shift. *See* Byrd's Affidavit Doc. #55-8. Being "fascinated by music," *id*., and going to church does not establish a belief that missing church violates one's religion.

Further, Byrd is unable to establish that he was terminated because of any conflicting requirement. As was discussed above, MPW asserts that Byrd's termination was due to his insubordination and the conflict created in the meeting with the Operations Manager, not due to his refusal to work on Sundays. Byrd has offered nothing to rebut this evidence, other than his stated disagreement. In fact, Byrd claims his obligation to establish a *prima faica* case is mooted by his establishment of discrimination through direct evidence. Pl's. Brief (Doc. #53) at 13. The court has already determined that Byrd has not provided direct evidence and also finds that he has fallen short of his burden to establish a *prima facia* case, or rebut the non-discriminatory reasons for his schedule change and termination as set forth by MPW. Accordingly, MPW is entitled to summary judgment on this issue.

### C.  *Retaliation (Count IV)*

In Count IV of the complaint, Byrd claims that he was retaliated against because he opposed unlawful discrimination, retaliation, a hostile work environment, and his complaints of discrimination and retaliation in violation of Title VII. Complaint (Doc. #1) at 6-7. "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

Byrd does not attempt to clearly set forth a *prima facia* case of retaliation in his brief. Thus, the court is unclear for which statutorily protected expression Byrd may have suffered

an adverse employment action. In this section of his Brief, he referrers in one sentence to his suspension following his conflict with Smith and qualifies his reaction to Smith's comment of "church little boy" as non-violent. Pl.'s Brief (Doc. #21) at 20-21. At the end of the section he states "[t]hat the record is quite clear that the complaint about Angela Hudson was made by [] Byrd on the same day that [] Byrd was fired by [] Smith." *Id*. at 21. Byrd offers nothing more than this statement. According to the parties' disputed/undisputed statement of facts, during the confrontation with Smith, Byrd complained that Angela Hudson was allowed a reduced schedule because of her sex and because the manager liked her style of work. *See* Def.'s Brief (Doc. #43) at 9. Smith responded by stating that he did not know Hudson, but that he would talk to her supervisor. *Id*. Apparently, Byrd is under the impression that the court should cobble together a *prima facia* case from a combination of inferences, MPW's Brief, and his own vague statement.[4] The court must disabuse Byrd of this belief. It is Byrd's responsibility to establish a *prima facia* case, and in this instance he has failed to even allege one.

Further, MPW offers non-discriminatory reasons for Byrd's suspension and termination, namely his tardiness and insubordination in the meeting with Smith. Once "the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action[,] [t]he ultimate burden of proving by a preponderance of the

---

[4] Byrd's other discussions of Angela Hudson in his Brief are to say that: she was a female and was not required to work on Sundays (p. 7 &12); MPW provided no evidence that she was not available to work on Sundays (p. 16); she was black and had the same duties as Byrd (p. 20); and she was employed after Byrd (p. 21). Pl.'s Brief (Doc. #54). He presents no argument in relation to Hudson on this issue.

evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Byrd has failed to provide any evidence, other than his failed attempt to establish direct evidence through the use of the terms "church little boy," in support of his claim. Byrd has failed to meet his ultimate burden and, therefore, MPW is entitled to summary judgment.

## V. MOTION TO STRIKE

MPW has also moved to strike the affidavits provided by Byrd in support of his opposition to summary judgment. The court did consider the Affidavits, as reflected in this opinion, and denies MPW's motion.

## VI. CONCLUSION

For the reasons stated in this opinion, it is

ORDERED that the Motion for Summary Judgment (Doc. #42) is GRANTED and this case DISMISSED. Further, it is

ORDERED that the Motion to Strike (Doc. #60) is DENIED.

A separate judgment will issue.

DONE this 24th day of February, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE